Salvatore **ALATA,** also known as Salvatore Alati, Appellant,

v.

John Foster **DULLES,** Secretary of State, Appellee.

No. 10957.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1954.

Decided Jan. 27, 1955.

United States Atty., Mr. Charles M. Irelan, Washington, D. C., also entered appearances for appellee. Messrs. Joseph M. Howard, William R. Glendon and Willian J. Peck, Asst. U. S. Attys., Washington, D. C., at the time the record was filed, also entered appearances for appellee.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

After a hearing the District Court dismissed the complaint of Salvatore Alata, a native born American who sought a declaratory judgment that he is a citizen of the United States. This the court denied on the ground that after induction into the Italian army in September, 1933, he took an oath of allegiance to the King of Italy, shown by the evidence to have been in December of the same year.[1]

The applicable statute, Section 2 of the Expatriation Act of March 2, 1907,[2] provides,

> "* * * any American citizen shall be deemed to have expatriated himself * * * when he has taken an oath of allegiance to any foreign state."

Alata became a citizen of the United States at his birth in New York City January 12, 1912. Perkins v. Elg, 307 U.S. 325, 328–329, 59 S.Ct. 884, 83 L.Ed. 1320. His parents were Italians and for that reason he was also a national of Italy under the law of that country. When about nine years of age, which would have placed the time in the neighborhood of 1921, he was taken by his parents to Italy and thenceforth resided there until he returned to the United States in 1949 on a certificate of identity to endeavor to

Mr. Jack Wasserman, Washington, D. C., for appellant.

Mr. Robert L. Toomey, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee. Mr. George Morris Fay, U. S. Atty., Washington, D. C., at the time the record was filed, and his successor as

1. The court also concluded that he had expatriated himself by continuous residence in Italy after attaining majority and failing to elect American citizenship by returning to this country and taking up permanent residence therein. This basis for sustaining the judgment is now un-

available and is not pressed by the appellee because of the decision in Mandoli v. Acheson, 344 U.S. 133, 73 S.Ct. 135, 97 L.Ed. 146. See, also, Dulles v. Iavarone, —— U.S.App.D.C. ——, 221 F.2d 826.

2. 34 Stat. 1228.

establish his status as a citizen, § 503 of the Nationality Act of 1940.[3]

The court found that Alata had taken the oath of allegiance above referred to and concluded as matter of law that thus he expatriated himself. No mention is made in the findings as to the voluntary character of the oath. Alata points out that expatriation results only from a voluntary renunciation or abandonment of citizenship and contends that the evidence fails to establish such conduct on his part. The Secretary of State answers that since the evidence supports the finding that he took the expatriating oath the burden of offsetting its effect by showing it to have been involuntary was cast upon him and he failed to carry this burden.

We agree with the Secretary's position as to where the burden lay. As held in Pandolfo v. Acheson, 2 Cir., 202 F.2d 38, 40,

"* * * The plaintiff has the burden of proving that he is a United States citizen. He made a *prima facie* case by alleging and proving his birth in New York. The Government then had the burden of showing that he had expatriated himself. This it did by proof of his oath of allegiance to the King of Italy. Presumptively this oath was voluntarily taken. He then had the burden of going forward with evidence to establish that it was taken under duress."

 This analysis seems contrary to the views expressed by the Court of Appeals for the Third Circuit in Lehmann v. Acheson, 206 F.2d 592, 598,[4] and has not been previously adopted in a precise manner by this court. In Acheson v. Maenza, 92 U.S.App.D.C. 85, 91, 202 F.2d 453, 459, it might be thought we took a different view when we said that the Government had "failed to sustain the burden of proof" of the two alleged grounds of expatriation there involved. But there insofar as the oath of allegiance was concerned the primary issue of fact was whether the oath taken by plaintiff was an oath of allegiance at all, and not the voluntary character of a conceded oath of allegiance. 92 U.S.App.D.C. at pages 88–89, 202 F.2d at pages 456–457. If involuntary or under duress it does not deprive one of his American citizenship. Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 161 F.2d 860; Pandolfo v. Acheson, supra. Though proof of the involuntary nature of the act is upon the one who has performed it, Pandolfo v. Acheson, supra, the rule is strong that factual doubts are resolved in favor of citizenship. This is clear from our decision in Acheson v. Maenza, supra, 92 U.S.App.D.C. at page 88, 202 F.2d at page 456, and is supported by the great weight of authority; Dos Reis ex rel. Camara v. Nicolls, supra; Lehmann v. Acheson, supra; Podea v. Acheson, 2 Cir., 179 F.2d 306; Mandoli v. Acheson, 344 U.S. 133, 73 S.Ct. 135, 97 L.Ed. 146; Tomasicchio v. Acheson, D.C. D.C., 98 F.Supp. 166. We must apply these principles to the present case.

 The 1933 entry of Alata into the military service of a foreign state was not then a statutory ground of expatriation.[5] The question whether his induction was voluntary or not is important, however, because it bears upon the voluntary character of the oath he took pledging allegiance to the King as an incident of the service. In an affidavit which he made before the American Vice Consul at Palermo, Italy, March 6, 1935, he stated that he had not been informed he should protest his induction but had been told by the American Consulate that it was always possible for him to return to the United States after completion of the military service, which no doubt was true under the law as it then stood. The affidavit set forth that he "took the oath of allegeance [sic] in connection with military service". In the same affidavit.

3. 54 Stat. 1137, 1171. [1952 Revision, 8 U.S.C.A. § 1503.]

4. See subsequent proceedings in same case, reported at 3 Cir., 214 F.2d 403.

5. Such service came into the statute as ground of expatriation in the Nationality Act of 1940, 54 Stat. 1137, 1169. [1952 Revision, 8 U.S.C.A. § 1481(a).]

Alata stated that he had applied for registration in 1928 and "my application was approved by the Department of State. I have always thought that in applying for registration I had done everything necessary to protect my American citizenship * * *." [6] Moreover, the nature of the advice given to Alata at his first visit to the Consulate at Palermo, Italy, prior to his induction into military service was such as to discourage any attempts to avoid induction into military service and the consequent demand for an oath of allegiance. See Podea v. Acheson, supra.

On the trial Alata testified not only that he did not wish to go into the service, saying "it was against his will", but explained the circumstances of his oath taking. He said that when people were taken into the Italian army they were put together by squads or corps for training purposes. At one time they gathered together about 5,000. He was in the back and the colonel was reading some paper he did not understand because he was far away. There were no loud speakers or amplifying system and he did not know what was being talked about. He said the entire group was put at attention "and that is all there was to it." He also testified he had told the Consulate that when the oath was administered he merely kept his hands at his side and did not swear and that he had not entered the army voluntarily but was drafted and forced to go.

We think on the whole evidence it is not adequately established that Alata lost his American citizenship. We pointed out in Acheson v. Maenza, supra, that induction into an army under a conscription law is alone insufficient to establish involuntariness of service under the Nationality Act of 1940, from which it would follow that conscription alone would not render the taking of the ensuing oath involuntary under the Act of 1907 here involved. But we also said, "there must be consideration of the circumstances attending the service in the foreign army, and the reasonable inferences to be drawn therefrom." 92 U.S.App.D.C. at page 90, 202 F.2d at page 458. The circumstances now before us are similar to those which were before the courts in Mandoli v. Acheson, supra. There our District Court had made a finding that Mandoli's service in the Italian army in 1931 was voluntary and that he had taken an oath of allegiance to the King.[7] In the Supreme Court the Government abandoned this as a ground of Mandoli's expatriation because of a ruling by the Attorney General that service in the Italian army by one similarly situated could only be regarded as having been under legal compulsion and that the choice of taking the oath or violating the law for a soldier in the army of Fascist Italy was no choice at all. 41 Op.Atty.Gen., No. 16, May 8, 1951. We are not bound by these views of the Attorney General but the Supreme Court accepted his position and it thus became part of judicial history and need not be entirely ignored in comparable cases. It would be anomalous for us in the case at bar to adopt a different position than the Supreme Court accepted in the Mandoli case, especially when we consider the

---

6. Some light is thrown upon his own intention and state of mind by his attempts to comply with what he thought were the requirements of American law. He not only registered in 1928 but one year later presented himself for a second registration, only then to be informed that this step was unnecessary. He says also that he returned to the Consulate to protest notice he had received that he had lost his American citizenship. His testimony as to the time of this is perhaps inaccurate since he places it in 1933 or 1934, while the certificate of expatriation made by the Vice Consul at Palermo is dated June 18, 1935. His protest no doubt was in the latter year. He further testified that in 1941, a few days after Pearl Harbor, he went to the Consulate again so that he could be sent back to the United States as soon as possible.

7. In affirming the judgment on independent grounds we said: "We need not consider whether an oath of allegiance to the King of Italy, which appellant was obliged to take when he was drafted into the Italian army, was in itself enough to expatriate him." Mandoli v. Acheson, 90 U.S.App. D.C. 112, 114, 193 F.2d 920, 922.

doubt cast by Alata's testimony as to the voluntary nature of his oath. This testimony, in view of conditions in Italy which took hold of him in 1933 in connection with his conscription into the Fascist army and the mass administration of an oath of allegiance which he says he did not hear, lead us to conclude that the oath taking was not such a voluntary or willful act of renunciation of American citizenship as the statute or decisions require to effect its loss. The contrary conclusion of the court below we think is not supported by its finding that the oath was taken. We have said that American citizenship is not to "be lightly taken away", Acheson v. Maenza, supra, 92 U.S.App. D.C. at page 88, 202 F.2d at page 456, and when the evidence with its reasonable inferences creates substantial doubt of the voluntariness of the conduct said to have brought about expatriation the resolution of such doubt in favor of the claimant to citizenship enables him to meet the burden of showing involuntariness.

Reversed and remanded.