**MITSUGI NISHIKAWA, Appellant,**

v.

**John Foster DULLES, as Secretary of State, Appellee.**

**No. 14742.**

United States Court of Appeals
Ninth Circuit.

June 18, 1956.

**136**

Wirin, Rissman & Okrand, A. L. Wirin, Fred Okrand, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, James R. Dooley, Los Angeles, Cal., for appellee.

Before CHAMBERS, Circuit Judge, and SOLOMON and HAMLIN, District Judges.

HAMLIN, District Judge.

This is an appeal from a judgment of the District Court decreeing that the appellant Nishikawa, who was born in the United States, lost his United States citizenship by entering and serving in the Armed Forces of Japan from March 1, 1941 to September 6, 1945, and denying appellant's prayer for judgment that he is a national of the United States.

The action was begun when Nishikawa filed a complaint for a judgment declaring that he was a national of the United States under § 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903, 1946 Ed.[1] The complaint alleged that he was born in the United States on April 20, 1916 and that on August 15, 1939 he went to Japan for the purpose of education and experience in the engineering field and that his intention was to return to the United States. The complaint further

---

1. This section was repealed by the Immigration and Nationality Act of 1952, and is now covered by 8 U.S.C.A. § 1503.

alleged that on or about March 1, 1941, plaintiff was conscripted into the Japanese army and served in that army until August, 1945, and that his service in said army was due to the Japanese conscription law and was the result of coercion, and was not the plaintiff's free and voluntary act. The defendant answered and admitted that the plaintiff had served in the Japanese army during the above dates at a time when the plaintiff was a national of Japan, and denied that such service was not a free and voluntary act of the plaintiff, denied that it was the result of coercion, and denied that it was due to the Japanese conscription law. The answer specifically alleged that such service was the free and voluntary act of the plaintiff.

On the trial of the matter, the plaintiff was called as the first and only witness. He testified, in substance, as follows: Until he went to Japan in 1939 he had resided and gone to school in the United States, graduating from the University of California with a degree in engineering. His parents then resided in the United States and his father had registered him in the family register in Japan when he was born. He stated he intended to stay two to five years in Japan to visit and to study. When he went to Japan he knew that Japan was fighting in Manchuria. In Japan he started to study under a tutor in Japanese language. His father died in November, 1939, and funds were not available and he found a job in an aircraft plant in Ota. About June of 1940 he received a notice to report for his physical examination pursuant to army service and he was inducted into the Japanese army in March, 1941. Between those dates he did not contact or attempt to contact any American or Japanese official, nor did he at any time protest his induction. At no time did he tell any Japanese or American official that he was a United States citizen. He had heard rumors that the Kempi Tai (Secret Police) beat up persons who attempted to avoid conscription, and a friend of his who worked at the American embassy told him that the consulate could do nothing for dual nationals, such as he was. When asked if he believed the rumors about the Kempi Tai, he stated:

"Well, at that time the Japanese government—Japanese army was coming into control of the Japanese government and even the high officials were killed in their homes. So I had no alternative. *But it might have been true.*" [Emphasis added.]

He testified that he knew nothing about the conscription of men in the army in the United States in September, 1940, or of conditions in the United States, and that he was not told of these matters in letters from home and they were not discussed among his United States citizen friends in Japan.

He testified, in part, as follows:

"Q. Now, you stated, did you not, Mr. Nishikawa, that in 1940 you received a notice to report for physical examination, is that correct? A. Yes, sir.

\* \* \* \* \* \*

"Q. Do you recall the approximate date? A. It was around June, 1940.

"Q. June of 1940. And you entered the Japanese army in March of 1941, is that correct? A. Yes, sir.

"Q. Now, between June of 1940, and March of 1941, did you go to the American Consulate and tell them that you did not want to serve in the Japanese army?

\* \* \* \* \* \*

"The Witness: No, sir, because I talked to friends of mine and they mentioned the fact that the American Consulate couldn't do anything for dual citizenship of Japanese while in Japan.

"Q. (By Mr. Dooley): Between June of 1940, and March of 1941, did you tell any Japanese official that you were an American citizen?

\* \* \* \* \* \*

"The Witness: No, sir.

"Q. (By Mr. Dooley): Between June of 1940 and March of 1941, did you make any effort to renounce your Japanese nationality?

* * * * * *

"The Witness: No, sir.

* * * * * *

"Q. Did you read the newspapers between September 16th, 1940, and March of 1941? A. No, sir.

"Q. You didn't read any newspapers? A. No, sir.

"Q. Now, how far did you go in school before you went to Japan in 1939, Mr. Nishikawa? A. I graduated from the University of California at Berkeley, sir.

"Q. And you took up engineering, did you not? A. Yes, sir.

* * * * * *

"Q. Now, when you received your notice to report to the Japanese army did you protest in any way your entrance in the Japanese army?

* * * * * *

"The Witness: No, I didn't." Tr. pp. 26–30.

"Q. (By Mr. Manes): Now, you indicated under cross-examination, Mr. Nishikawa, that you did not protest against your induction into the army—A. Yes.

"Q. —and that you did not protest against the taking of a physical examination? A. Yes, sir." Tr. p. 37.

"The Court: And in June, 1940, when you were told that you were to be drafted into the Japanese army, between June, 1940, and March, 1941—a period of almost a year—you didn't make any effort to find out whether an American citizen—you knew you were an American citizen?

"The Witness: Yes, sir.

"The Court: You didn't make any effort to find out whether an American citizen was required to go into the Japanese army. And the reason that you didn't make any effort was that you heard rumors that the Kempi Tai would beat you if they found that you didn't want to go into the army; is that your testimony?

"The Witness: Yes, sir. Also, this nisei friend of mine that was employed in the embassy stated the fact that dual citizen niseis, the American Consulate couldn't do anything for the citizen nisei." Tr. p. 47.

"The Court: In other words, he told you that if you went to the officials of your own country, the United States—

"The Witness: Yes.

"The Court: —that the Japanese police would find out about it and they would beat you; right?

"The Witness: Yes." Tr. p. 49.

After argument by counsel, the Court made the following statements:

"Well, of course, the short answer to the entire argument, counsel, is that the Court simply does not believe the testimony of the witness. That is all. I simply do not believe his testimony." Tr. p. 55.

"I believe this: he went into the service because he wanted to go into the service. I believe he went to Japan, and I believe that he waited for them to call him to the service, because under the laws of Japan that's the manner in which they took their men into the service under the draft laws, the conscription laws." Tr. p. 56.

" * * * All I am saying is that he went over because as a Japanese citizen under the laws of Japan it was necessary for him to serve his hitch in the army. He went over there to serve his hitch in the army. He went over and waited until they reached him on the draft, and when they did he was drafted. And that is what he was there for. And his service could not be considered involuntary." Tr. p. 57.

The Court entered Findings of Fact in which the Court found that plaintiff went to Japan in August, 1939 at twenty-three years of age, knowing at that time that he was likely to be called for military service in the Japanese Armed Forces; that he served in those armed forces from March, 1941 to September, 1945 while he was a national of Japan; that from the time he received his notice to report for physical examination in June, 1940 until March, 1941 when he was inducted, the plaintiff made no effort (1) to return to the United States; (2) to avoid entry or service in the Japanese Armed Forces; (3) to renounce his Japanese nationality; (4) to communicate or attempt to communicate, either with American officials in Japan, or with Japanese officials, with respect to the necessity or propriety of his entry and service in the Japanese Armed Forces. The Court further found that the service was not the result of coercion, and that it was the free and voluntary act of the plaintiff. On these Findings, he entered the Judgment from which this appeal is taken.

Appellant contends that some of the findings made by the lower court must be set aside, because (1) there is no positive evidence in the record to support them and they were expressly negatived by the plaintiff on the stand; (2) the proof of expatriation must be "clear, unequivocal and convincing"; and (3) the burden of proof of the voluntary nature of the expatriating act is on the one trying to show expatriation (here, the defendant) and the burden of proof is not on the plaintiff to show involuntariness.

 Counsel for both parties agree that the act of expatriation must be a voluntary act on the part of the plaintiff in order to effect an expatriation. However, there is no requirement that he knew or intended that his act would result in an expatriation. Savorgnan v. United States, 1950, 338 U.S. 491, 70

S.Ct. 292, 94 L.Ed. 287. The ground of expatriation relied on by the defendant in the present case is that contained in § 401(c) of the Nationality Act of 1940, 8 U.S.C.A. § 801(c), 1946 Ed. That section reads as follows:

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

\* \* \* \* \* \*

"(c) Entering, or serving in, the armed forces of a foreign state unless expressly authorized by the laws of the United States, if he has or acquires the nationality of such foreign state."

That section is fortified by the presumption appearing in § 402 of the same Act, 8 U.S.C.A. § 802,[2] 1946 Ed., which reads in part as follows:

"A national of the United States who was born in the United States \* \* \* shall be presumed to have expatriated himself under subsection (c) or (d) of Section 801, when he shall remain for six months or longer within any foreign state of which he or either of his parents shall have been a national according to the laws of such foreign state \* \* \* and such presumption shall exist until overcome whether or not the individual has returned to the United States. \* \* \*"

The crucial issue in this case is whether the entry of the plaintiff into the armed forces of Japan was a voluntary act on his part. In 1940 when this statute was enacted by Congress it was well known that many countries had conscription laws. If Congress had intended to exclude the act of a dual national who entered the military service of a foreign country by means of the conscription laws from the expatriation provisions of the Act, it would have been very simple to so provide. The plaintiff contends that the burden of proof of voluntariness was

2. Sections 802 and 801(c) were repealed by the Immigration and Nationality Act of 1952 and are now covered by 8 U.S. C.A. §§ 1482 and 1481(a) (3) respectively.

on the defendant, while the defendant contends that the burden of proof was on the plaintiff to show involuntariness. The issue was expressly resolved in the case of Pandolfo v. Acheson, 2 Cir., 202 F.2d 38, and the ruling there was followed by the Court of Appeals for the District of Columbia in Alata v. Dulles, 95 U.S.App. 182, 221 F.2d 52, and appears to us to be the correct rule. In Alata v. Dulles, supra, 221 F.2d at page 54, it is said:

"The Secretary of State answers that since the evidence supports the finding that he took the expatriating oath the burden of offsetting its effect by showing it to have been involuntary was cast upon him and he failed to carry this burden.

"We agree with the Secretary's position as to where the burden lay. As held in Pandolfo v. Acheson, 2 Cir., 202 F.2d 38, 40,

"'* * * The plaintiff has the burden of proving that he is a United States citizen. He made a *prima facie* case by alleging and proving his birth in New York. The Government then had the burden of showing that he had expatriated himself. This it did by proof of his oath of allegiance to the King of Italy. Presumptively this oath was voluntarily taken. He then had the burden of going forward with evidence to establish that it was taken under duress.'"

This rule if applied here would cast the burden upon the plaintiff to show that his entry into the armed forces was involuntary. There is no presumption that one who is conscripted into the armed forces enters involuntarily, and all the circumstances must be looked at to resolve the question of voluntariness. Acheson v. Maenza, 92 U.S.App.D.C. 85, 202 F.2d 453, 459; Alata v. Dulles, supra; see 15 A.L.R.2d 550, and 1956 Supp. In Alata v. Dulles, supra, 221 F.2d at page 55, the Court said,

"We pointed out in Acheson v. Maenza, supra, that induction into

an army under a conscription law is alone insufficient to establish involuntariness of service under the Nationality Act of 1940 * * *. But we also said, 'there must be consideration of the circumstances attending the service in the foreign army, and the reasonable inferences to be drawn therefrom. * * *'"

■ The trier of fact need not accept the uncontradicted testimony of a witness who appears before it, and the demeanor of that witness may be such as to convince the trier that the truth lies directly opposed to the statements of the witness. N. L. R. B. v. Howell Chevrolet Co., 9 Cir., 204 F.2d 79, 86, affirmed sub. nom. Howell Chevrolet Co. v. N. L. R. B., 346 U.S. 482, 74 S.Ct. 214, 98 L.Ed. 215; Chow Sing v. Brownell, 9 Cir., 217 F.2d 140, 143; Lew Wah Fook v. Brownell, 9 Cir., 218 F.2d 924; Mar Gong v. Brownell, 9 Cir., 209 F.2d 448, 449, 450; Wigmore on Evidence, Third Ed., Vol. VII, § 2034 n. 3; Zimmer v. Acheson, 10 Cir., 191 F.2d 209, 212. This rule is particularly true where the witness is interested in the outcome of the case, or where his testimony is improbable or contains patent omissions and inconsistencies. Quock Ting v. United States, 140 U.S. 417, 420, 11 S.Ct. 733, 35 L. Ed. 501; Zimmer v. Acheson, supra. We think that the testimony of the plaintiff in the present case, as revealed in the record and summarized and set out above in part, clearly brings it within this rule, and entitled the Court to find that the facts were otherwise than stated by the plaintiff, and by clear and convincing proof, if need be. Under no circumstances can it be said that they are "clearly erroneous" within the meaning of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., and hence they cannot be set aside by this Court.

The Court was not required to believe that appellant was himself the victim of terror conditions in Japan. In discussing a similar contention in this Court in Coumas v. Brownell, 9 Cir., 1955, 222 F. 2d 331, 332, Chief Judge Denman said:

"Coumas first contends that since expatriation must be caused by his 'voluntary' act, Perkins v. Elg, 307 U.S. 325, 334, 59 S.Ct. 884, 83 L.Ed. 1320, his entry into the Greek army was involuntary because he was *inducted* into it. It nowhere appears that he protested his induction, and he voluntarily went to Greece presumably knowing that under the Greek law he, a Greek citizen, might be conscripted into the army. Cf. Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 161 F.2d 860."

This language is particularly descriptive of the facts in the instant case.

■■ Neither the facts found by the District Court nor the inferences from those facts can be set aside by this Court unless "clearly erroneous". The record here amply supports the conclusion of the lower court that the act of the plaintiff in entering the Japanese army was a voluntary act.

■ Appellant further complains of the refusal of the lower court to admit in evidence the passport application of appellant. There appears to be no error in this ruling. In any event the appellant testified upon the trial to all of the important facts which appeared in the passport application.

■ It is further contended that the recent decision in Gonzales v. Landon, 350 U.S. 920, 76 S.Ct. 210, means that this case should be reversed, inasmuch as the Court there said that proof of expatriation must be by "clear and convincing" evidence, and that this was not done here. We do not agree. First, the Gonzales case only dealt with § 401(j) of the 1940 Act which provides that a person expatriates himself when he remains out of the country *for the purpose* of avoiding service in the armed forces of the United States. This ground of expatriation, unlike the one in issue here, requires a mental element in the expatriating act itself. This is all the more clear by the fact that the cases cited by the Supreme Court for its authority dealt also with conduct requiring a certain mental element. Baumgartner v. U. S., 1943, 322 U.S. 665, 64 S.Ct. 1240, 88 L. Ed. 1525; Schneiderman v. U. S., 1942, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. Secondly, the fact that appellant here performed the act that is proscribed by § 401(c), to-wit, entering and serving in the armed forces of Japan, was established by clear and convincing evidence,—in fact, it was pleaded by plaintiff in his complaint and admitted in the answer.

■ Appellant further contends that § 401(c) of the 1940 Act which is here under consideration, is unconstitutional. This Court has already held other sections of the same Act providing for expatriation to be constitutional. As to § 401(j), Vidales v. Brownell, 9 Cir., 217 F.2d 136, 138; Gonzales v. Landon, 9 Cir., 215 F.2d 955, reversed on other grounds, 350 U.S. 920, 76 S.Ct. 210; as to § 401(e), Miranda v. Clark, 9 Cir., 180 F.2d 257. There is nothing in these previous holdings of this Court to indicate that the same result should not be reached as to § 401(c). Moreover, the many cases from other circuits, cited above, which have considered expatriation under § 401(c) have assumed that it is constitutional. Appellant asserts that all persons born in the United States are citizens by virtue of the Constitution and that Congress is powerless to enact laws which will deprive a native born American of his citizenship absent a voluntary renunciation by such person. That Congress has such power was established in Mackenzie v. Hare, 239 U.S. 299, 36 S.Ct. 106, 60 L.Ed. 297. In our view, the claim of unconstitutionality lacks merit.

The judgment of the District Court is affirmed.