Manuel GONZALEZ–JASSO, Appellant,

v.

William P. ROGERS, Attorney General of the United States, Appellee.

No. 14626.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 14, 1959.

Decided March 5, 1959.

Mr. Joseph Forer, Washington, D. C., with whom Mr. David Rein, Washington, D. C., was on the brief, for appellant.

Mr. Harry T. Alexander, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

The issue in the present case is whether uncorroborated extra-judicial admissions by a native-born American that he voted in a foreign political election are sufficient to serve as a basis for expatriation under Section 401(e) of the Nationality Act of 1940.[1]

Appellant was born of Mexican parents in El Paso, Texas, on November 11, 1919, and thereby became a dual national of the United States and Mexico. At the age of eleven he moved with his parents to Mexico. On three separate occasions—April 9, 1945, September 25, 1945, and September 23, 1948—appellant sought to re-enter the United States from Mexico. On each of these occasions he was examined under oath before a Board of Special Inquiry and each time admitted in response to questions that on some undetermined date in 1944, in the city of Delicias, Chihuahua, Mexico, he had voted in a Mexican election for Fernando Foglio Miramontes, who was a candidate at that time for the Governorship of the State of Chihuahua.[2] At each inquiry, the Board accepted these admissions as sufficient for ex-

1. Ch. 876, 54 Stat. 1168:
   "Sec. 401. A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:
   * * * * *
   "(e) Voting in a political election in a foreign state or participating in an election or plebiscite to determine the sovereignty over foreign territory * * *."
   Now 8 U.S.C.A. § 1481(a) (5).

2. Record of Hearing Before a Board of Special Inquiry, April 9, 1945:
   "Q. Have you ever voted in the Republic of Mexico? A. Yes. I voted for Fernando Foglio Miramontes.
   "Q. On what date and at what place did you vote for * * * Miramontes? A. At Delicias, Chih., Mexico. It was more or less about six months ago. * *
   "Q. For what office was * * * Miramontes running? A. He was running for the Governorship of the state of Chihuahua.
   * * * * *
   "Q. In what manner did you vote for * * * Miramontes? A. By placing a cross on the ballot. It was a piece of paper about half the size of an ordinary typing sheet.
   * * * * *

   "Q. Were you forced in any way to vote in the election last year? A. No.
   "Q. Why did you vote? A. Because * * * Miramontes was a schoolmate of mine and I wanted to vote in his favor."
   Record of Hearing Before a Board of Special Inquiry, September 25, 1945:
   "Q. Do you admit that you voted in Delicias, Chihuahua, Mexico in 1944? A. Yes.
   "Q. For whom did you vote? A. For Fernando Foglio Miramontes.
   "Q. How did you manage to vote there in Delicias * * * if you were not eligible on account of your residence? A. I just went with some friends and voted for my friend, Fernando Foglio Miramontes."
   Record of Hearing Before a Board of Special Inquiry, September 23, 1948:
   "Q. Of what country are you a citizen? A. I was born in the United States but I lost my citizenship for having voted and I am not a citizen of any country.
   "Q. It appears that although your claim of birth in the Unted States was accepted by this Service, it is also shown that you had voted voluntarily for Fernando Foglio Miramontes for Governor of the State of Chihuahua, Mexico and

patriation under Section 401(e) of the Nationality Act of 1940, and refused entry.

On June 10, 1955, appellant entered the United States at El Paso, representing himself to be an American citizen. Deportation proceedings were later instituted against him.[3] At the deportation hearing the appellant acknowledged that he had made the admissions before the Boards of Special Inquiry, but testified that these admissions were untrue and that in fact he had not voted in the 1944 Mexican election at Delicias or in any other Mexican election. He attempted to explain his reasons for making the prior admissions and offered evidence of his ineligibility to vote in Delicias at that time. The Government offered no evidence other than the records of the Boards of Special Inquiry. The Special Inquiry Officer found that appellant had lost his citizenship under Section 401(e) of the 1940 Act by voting in the 1944 Mexican election and ordered the appellant deported. The Board of Immigration Appeals made similar findings, and affirmed the deportation order.

There followed this present suit in the District Court for a judgment declaring the appellant to be a citizen of the United States and enjoining the deportation order. At the trial the appellant again repudiated his prior admissions before the Boards of Special Inquiry and sought to explain his actions. The appellee introduced no further evidence at trial, but rested on the records of the deportation proceedings and Boards of Special Inquiry. The District Court found for the defendant-appellee and this appeal followed.

There can no longer be any doubt that the burden of proof in expatriation cases under Section 401 of the Nationality Act

of 1940 is exceedingly onerous. The Supreme Court made this clear in Gonzales v. Landon, 1955, 76 S.Ct. 210, 100 L.Ed. 806, 350 U.S. 920, a case strikingly similar to the present one. There, the subject of the deportation proceedings—a native born American having dual nationality—was alleged to have made certain statements under oath to the immigration authorities from which they concluded that he had remained in Mexico with the intention of evading the draft laws of the United States. Such conduct is a ground for expatriation under Section 401(j) of the Nationality Act.* In a suit to establish his United States citizenship, he denied having remained in Mexico to evade the draft, and denied having made any admissions to that effect. The District Court rejected his testimony and denied relief, relying on the prior statements under oath, as contained in the transcript of the immigration proceedings. The Ninth Circuit affirmed. 9 Cir., 1954, 215 F.2d 955. The Supreme Court, however, reversed *per curiam*, holding that "the standard of proof required in denaturalization cases, see Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796; Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525, is applicable to expatriation cases arising under § 401(j) of the Nationality Act of 1940, 54 Stat. 1137, as amended, and has not been satisfied in this case." 350 U. S. at page 920, 76 S.Ct. at page 210.

That decision is controlling here. In cases of the present sort, it is clear there must be "solidity of proof which leaves no troubling doubt in deciding a question of such gravity as is implied in an attempt to reduce a person to the status of alien from that of citizen." Baumgartner v. United States, supra, 322 U.S. at page 670, 64 S.Ct. at.

---

Delicias, Chihuahua, Mexico, about six months prior to the date of your first exclusion; is that correct? A. Yes."

3. The Government alleged that appellant was not a citizen, but an alien excludable

for lack of proper documentation. Section 241(a) (1) of the Immigration and Nationality Act, 66 Stat. 204, 8 U.S.C.A. § 1251(a) (1).

* Now 8 U.S.C.A. § 1481(a) (10).

page 1243. The burden is on the Government to prove an act of expatriation, Mitsugi Nishikawa v. Dulles, 1958, 356 U.S. 129, 133, 78 S.Ct. 612, 2 L.Ed.2d 659, and it must do so by evidence which is "clear, unequivocal, and convincing," and which does not leave the issue in doubt. Schneiderman v. United States, supra, 320 U.S. at page 125, 63 S.Ct. 1333, 1336.

Here, the District Judge was not impressed by appellant's testimony at the trial of his case, and concluded that his earlier statements to the Immigration Service represented the truth. Ordinarily, the opportunity of the trial court to observe the demeanor of the witness will be given great weight, and the court's conclusions of fact will not lightly be overturned. Fed.R.Civ.P. 52(a), 28 U.S.C.A. But in citizenship cases the appellate courts will "reexamine the facts to determine whether the United States has carried its burden * * *." Knauer v. United States, 1946, 328 U.S. 654, at page 657, 66 S.Ct. 1304, 1307, 90 L.Ed. 1500. Notwithstanding Rule 52(a), "factual doubts are resolved in favor of citizenship," Alata v. Dulles, 1955, 95 U.S.App.D.C. 182, 184, 221 F.2d 52, 54; Soccodato v. Dulles, 1955, 96 U.S.App.D.C. 337, 340, 226 F.2d 243, 246.

The only evidence to show that appellant voted in the Mexican elections came from his own lips, and was later repudiated from the same source. The earlier statements are of course receivable in evidence. But to establish a sound basis for expatriation, these statements must be satisfactorily corroborated, and the totality of the evidence must rise to the standard set by the Supreme Court. In criminal proceedings the rule is that extra-judicial admissions are insufficient to establish the *corpus delicti* or uphold the conviction without corroborative evidence. See 7 Wigmore, Evidence § 2071 (3d ed. 1940).[4] Though the "corroborative evidence need not be sufficient, independent of the statements,

to establish the *corpus delicti* * * * [it should] tend to establish the trustworthiness of the statement." Opper v. United States, 1954, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101; see Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; United States v. Calderon, 1954, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202. We need not go so far as to say that these rules, or any others in the field of criminal law, are directly applicable to cases like the present. But they provide a helpful analogy. If uncorroborated admissions are insufficient to convict a man of a crime, they should hardly suffice to deprive him of his citizenship. Nieto v. McGrath, D.C.S.D.Tex.1951, 108 F.Supp. 150, 154.

In the present case, the Government offered no corroborative evidence to prove that the appellant voted in the 1944 Mexican elections. The only evidence offered was the extra-judicial admissions of the appellant before the three Boards of Special Inquiry. The fact that these admissions were made under oath in previous hearings is of no consequence in determining their extra-judicial character. Cf. Martin v. United States, 8 Cir., 1920, 264 F. 950. Nor can the admissions before the second or third Board of Special Inquiry be used as a basis for establishing the trustworthiness of the admissions before the first Board of Special Inquiry. Cf. United States v. Echeles, 7 Cir., 222 F.2d 144, 156, certiorari denied, 1955, 350 U.S. 828, 76 S.Ct. 58, 100 L.Ed. 739. Under these circumstances, there is no sufficient evidentiary basis for concluding that the appellant voted in the 1944 Mexican elections and thereby expatriated himself. See Martinez v. McGrath, D.C.S.D.Tex. 1952, 108 F.Supp. 155; Nieto v. McGrath, supra. The judgment must be reversed and the case remanded to the District Court for further proceedings not inconsistent with this opinion.

So ordered.

4. For a discussion of the rationale for this rule see Note, 103 U.Pa.L.Rev. 638 (1955).