## MATTER OF SINCLITICO

### In Deportation Proceedings

#### A–19155548

*Decided by Board June 2, 1975*

The respondent, a native of the United States, became a naturalized citizen of Canada and thereafter entered the United States as a visitor, and having remained longer than authorized, was found deportable under the provisions of section 241(a)(2) of the Immigration and Nationality Act. On appeal the proceedings are terminated upon the respondent's establishing by a preponderance of the evidence that before and after his Canadian naturalization, he did not have the mental capacity to expatriate himself under the provisions of section 349(c) of the Act. Under these circumstances the burden was on the Government to show that respondent had sufficient mental capacity to understand in a reasonable manner, the nature and effect of his act. The Service failed to prove, by a preponderance of the evidence, that respondent had expatriated himself and was an alien. The appeal is sustained.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor— remained longer

ON BEHALF OF RESPONDENT:  Gordon C. Dale, Esquire
1815 N. Broadway
Santa Ana, California 92706

In a decision of an immigration judge dated September 21, 1970, the respondent was found deportable on the above-stated charge, but was granted the privilege of voluntary departure. In that decision, the immigration judge found that the respondent had expatriated himself as a result of his naturalization as a citizen of Canada on December 8, 1961. A reopened hearing was held on November 15, 1971 for the purpose of affording the respondent an opportunity to present additional medical evidence concerning his mental condition at the time of his naturalization in Canada in 1961. In an oral decision of the same date, the immigration judge found the respondent has been expatriated and is not a citizen of the United States, found him deportable as charged, and granted him voluntary departure. This is an appeal from this decision. The appeal will be sustained.

The respondent is an unmarried male, who was born at Lawrence,

Massachusetts, on June 30, 1921, to United States citizen parents. He was admitted to Canada as a landed immigrant on June 16, 1953 and on December 8, 1961, took an oath of allegiance, and was granted Canadian citizenship. He was admitted to the United States as a nonimmigrant visitor at Niagara-Falls, New York, in October 1968, for a temporary period not to extend beyond March 1969. He was granted a temporary stay until February 8, 1970, but failed to depart from the United States within the time specified.

The issue is whether the applicant's naturalization in Canada caused him to lose United States citizenship. The immigration judge found that the respondent, was mentally competent and was aware of what he was doing when the decision was made to become a citizen of Canada. That is, he found that the respondent voluntarily became naturalized, has expatriated himself, and is not a citizen of the United States. It is counsel's contention that expatriation did not result because the respondent was not mentally competent to intelligently and intentionally surrender his United States citizenship and assume Canadian citizenship.

Prior to the enactment of section 349(c) of the Immigration and Nationality Act on September 26, 1961, the burden was on the Government to establish expatriation by clear, convincing and unequivocal evidence. See *Gonzales–Jasso* v. *Rogers*, 264 F.2d 584 (D.C. Cir. 1959); *Nishikawa* v. *Dulles*, 356 U.S. 120 (1958).

The Supreme Court held in *Woodby* v. *INS*, 385 U.S. 276 (1966) that the test for burden of proof in a deportation proceeding is as follows: "No deportation order may be entered unless it is found by clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation are true." However, this is not the situation in reference to a case involving loss of citizenship. Section 349(c) of the Act [1] was specifically enacted by Congress to change the degree of proof required in loss of citizenship cases from clear, unequivocal and convincing evidence to that of a preponderance of the evidence. This purpose is clearly shown in the legislative history of the statute (see House Report 1086, August 30, 1961, to accompany S. 2237). In *Matter of Gonzalez–Gomez*, 12 I. & N. Dec. 344 (BIA 1967), we held that the United States Supreme Court considered that the degree of proof provision of section 349(c) was

---

[1] Section 349(c) of the Immigration and Nationality Act reads as follows:

"Whenever the loss of United States nationality is put in issue in any action or proceeding commenced on or after the enactment of this Subsection under, or by virtue of, the provisions of this or any other Act, the burden shall be upon the person or party claiming that such loss occurred, to establish such claim by a preponderance of the evidence. Except as otherwise provided in Subsection (b), any person who commits or performs, or has committed or performed, any act of expatriation under the provisions of this or any other Act shall be presumed to have done so voluntarily, but such presumption may be rebutted upon a showing, by a preponderance of the evidence, that the act or acts committed or performed were not done voluntarily."

an exception to the rules the Court was enunciating in the *Woodby* case.

A medical diagnosis from a psychiatrist was submitted in evidence (Exh. R–1). The psychiatrist's diagnosis was "Schizophrenia with paranoid features" and it was his opinion that "it would be justifiable to claim that he was not well enough to make a rational decision when he surrendered his United States citizenship. This diagnosis and medical opinion was based upon the psychiatrist's personal observation of the respondent from when he first saw him in July 1941 at various intervals up to March 1950 and upon letters received from the respondent from 1950 through 1960. In the record there is a diagnosis made in 1954 of the respondent by a psychiatrist and by a psychologist from the Ontario Mental Health Clinic, in which the respondent was diagnosed as presenting a "paranoid picture" (Exh. R–3) and reflecting "the distortion of ideational processes seen in schizophrenia" (Exh. R–4). A diagnostic report dated June 20, 1963, less than two years after the respondent became a Canadian citizen, was provided by a psychiatrist which was based on medical visits on five occasions prior to the date of the report. The psychiatrist's diagnosis of the respondent was "Paranoid Schizophrenia."

In addition to the medical evidence, the respondent's brother, the Dean of the University of San Diego Law School, was a witness at the reopened deportation hearing. He testified as to his knowledge that his brother had been diagnosed as a schizophrenic as early as 1940 (Tr. pp. 28 and 29); that his brother was treated for schizophrenia; and he related examples of his brother's poor judgment, mental incompetence and strange behavior for the period from 1958 to 1968 (Tr. pp. 79, 81, 88, 94 and 95). The respondent coroborated by his own testimony that he made contributions to religious missions and purchased about 70 medical books for his medical library, despite his financial problems (Tr. pp. 92–96). In response to questions on his application for voluntary departure, the respondent did not seem to understand the questions and actually his answers were not responsive. (Tr. pp. 98 and 99).

"Schizophrenia" is defined as "Bleuler's term for dementia praecox. A psychosis characterized by lack of effect, inappropriate mood, unpredictable behavior, and disintegration. Frequently terminates in mental regression, total withdrawal from reality into phantasies and paranoid formulations." (Blackiston's–*New Gould Medical Dictionary,* p. 910); *Becker* v. *Becker,* 138 N.Y.S. 2d 397, 399, 207 Misc. 17 (1954). "Schizophrenia, paranoid" is a disintegration of the mind and personality of the individual characterized by disturbances of thinking, hallucinations, and similar manifestations. *In re Meyers,* 189 A. 2d 852, 858, 410 Pa. 455 (1963); Am. Jur., Proof of Facts, Medical Glossary, p. 215.

The question to be resolved is not that of voluntariness, but whether the respondent had the mental capacity or competence to expatriate

himself by Canadian naturalization. The whole pattern of the respondent's life, including his poor judgment, strange behavior and medical diagnosis of schizophrenia from childhood, shows mental incompetence to make an intelligent decision regarding voluntarily surrendering his United States citizenship. We are satisfied that the respondent has successfully rebutted any presumption that he voluntarily expatriated himself as a result of Canadian naturalization in 1961. Under these circumstances, the burden was on the Government to show that at the time of his naturalization as a citizen of Canada, the respondent was experiencing a lucid interval when he had sufficient capacity to understand in a reasonable manner the nature and effect of the act which he was doing. We conclude that the Service has not sustained its burden of proving by a preponderance of the evidence that the respondent was expatriated and was an alien. The deportation proceedings will be terminated.

ORDER: The appeal is sustained and the deportation proceedings are terminated.