Stanislaw Andreej **GRZYMALA–SIED-LECKI**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 18318.

United States Court of Appeals
Fifth Circuit.

Jan. 20, 1961.

Jones, Circuit Judge, dissented.

Jack M. Thornton, Columbus, Ga., for appellant.

Kenneth C. Shelver, Washington, D. C., Truett Smith, Asst. U. S. Atty., Macon, Ga., Malcolm Richard Wilkey, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for appellee.

Before JONES, Circuit Judge, and JOHNSON and HOOPER, District Judges.

HOOPER, District Judge.

The sole question here presented is whether or not under the undisputed testimony of the appellant (herein referred to as the applicant) he is entitled to naturalization.

His petition for naturalization was rejected by the Immigration and Naturalization Service and was opposed before the trial judge who denied the same. Subsequently however, the Central Office of the Immigration and Naturalization Service after a study of the record, requested the trial judge to vacate his order and grant the application, but the judge declined to do so. The office of the Attorney General communicated with this court a desire to confess error on appeal, but was advised that this court desired to hear the appeal on its merits, which was done.

The question is whether or not under the undisputed facts in the record applicant comes within the exclusionary clause of § 313 of the Immigration and Naturalization Act of 1952 (8 U.S.C.A. § 1424) pertaining to persons who establish that membership in or affiliation with a Communist organization "was for purposes of obtaining employment, food rations, or other essentials of living," and was "necessary for such purpose." See 8 U.S.C.A. § 1424(6) (d). As applicant was admittedly qualified in all other respects (among other things having had five years service in the United States Army with an honorable discharge) a determination of his rights depends upon a proper interpretation of the aforesaid statute.

The Evidence Adduced Before
The Trial Court.

As stated above, the only evidence upon the question of the applicant's previous membership in a Communist dominated organization was given by himself, first before the Naturalization Examiner and subsequently to the court. There is nothing in the record to indicate any contradictions in his various statements, nor any reluctance by him to give all of the facts and circumstances surrounding his life and the details of his association with the Communist dominated government of Poland.

Applicant's father, an officer in the Polish Army, separated from his wife when applicant was a small boy, moving to Australia. Applicant's mother subsequently remarried, but her second husband had ill health with small earning capacity, and the burden of supporting a family (including applicant and two younger children) fell largely upon the mother. When applicant graduated from high school he found no oppor-

tunities for earning a livelihood absent a college education, but all schools of higher learning in Poland were then Communist dominated, and admission to any of them rendered the student automatically a member of a Communist controlled youth organization. Enrollment in said Naval Academy however, automatically carried with it membership in a Polish youth organization entitled Youth Zeiazek Mlodziesy Polakiej, also known as ZMP. He signed no application for membership, received no membership card and was never sworn in. His only participation in its activities was compulsory attendance at bi-monthly meetings while a student. At a few of the meetings he was required to make a brief talk to stimulate discussion, and then he chose economics as his subject.

In 1951 while a student at the Academy he returned to his home near the Polish-Czechoslovakian border and with two friends attempted to escape across the border by foot, but they were caught and questioned and applicant was allowed to return to school, the Communist authorities accepting his contention that he was not seeking to escape, but that should he desire to do so he would have better opportunities by virtue of his travels at the Naval Academy.

Completing his studies at the Naval Academy in May, 1952 he was sent on a pleasure cruise. While the ship was anchored at Genoa, Italy, he deserted the Polish ship and reported to the American Consulate, which in turn sent him to the Italian police. When questioned by the Italian Counter-Intelligence he furnished information concerning conditions in Poland and the armed strength of the Russians there. On being released applicant then participated in broadcasts to Poland for Radio Free Europe.

Upon learning of the Lodge Act, 64 Stat. 316 (under which he could enlist in the United States Army for a period of five years and after securing an honorable discharge seek United States citizenship) applicant went from Rome to West Germany and there in December, 1953 enlisted in the United States Army. He was brought to the United States on January 10, 1954, married an American citizen in July, 1958, and received his honorable discharge on December 2, 1958.

A careful reading of the entire record in this case convinces us that the trial judge, who wrote no opinion rejected this application upon the basis of the facts as contained in the testimony of the applicant, and there is nothing to indicate that he rejected any part of the applicant's testimony as being untrue.[1]

Had the trial judge with his opportunity to observe the manner and demeanor of the applicant as he testified accepted so much of his testimony as disclosed the applicant's membership in the organization in question, but on the other hand denied applicant's explanation and reasons therefor, a different result might be reached in this case. See Lum Jung Hop v. Herter, Secretary of State, 2 Cir., 282 F.2d 923, in which the trial judge considered applicant's testimony to be unsatisfactory, evasive and contradictory. See also Mitsugi Nishikawa v. Dulles, Secretary of State, 9 Cir., 235 F.2d 135(4). While applicant's testimony concerning his early life and conditions in Poland might not have been easily susceptible of verification or contradiction by the Government, the same cannot be said of his career since he landed in Genoa, Italy, and in no particular has any doubt been thrown upon the truthfulness of his story from that point. Other facts in the record will be discussed in the Opinion below:

(1) The Immigration and Naturalization Act of June 27, 1952 in § 313 provides that no person shall thereafter be naturalized as a citizen of the United

---

1. The trial judge must have felt some regret in making this rejection as he stated: "Now, let me say to the petitioner that I find myself admiring him very much."

States who is, or within a period of ten years immediately preceding the filing of the petition for naturalization was, a member of or affiliated with the Communist or other totalitarian party of any foreign state. Such a person however, may be naturalized "if such person establishes that such membership or affiliation is or was involuntary, * * or was for purposes of obtaining employment, food rations, or other essentials of living and where necessary for such purposes." See 8 U.S.C.A., § 1424 (6) (d).

We are not called upon to decide whether applicant's membership in this case was "involuntary," but his insistence is that his membership in the Communist youth organization in question "was for purposes of obtaining employment, food rations, or other essentials of living," and was "necessary for such purposes."

We are not even called upon to decide the narrow question as to whether an education beyond the high school level is included in the phrase "other essentials of living," for under the facts in this record he could not earn his livelihood in Poland without the additional education he sought.

The language of the statute in question was derived without change from the Act of March 28, 1951 (65 Stat. 28). When that Act was before Congress an amendment was offered by Senator Ferguson to make the ameliatory provision applicable to prior members of Communist organizations, and Senator Ferguson stated:

"The amendment would include all those who were Communists by conviction, what we might call *mentally* Communists. But it would not include those who really, in effect, never have been what I call *mentally* Communist—those whose Communist affiliation was nominal or involuntary." 97 Cong.Rec., 2368. (Italics ours.)

In Galvan v. Press, 347 U.S. 522, at page 527, 74 S.Ct. 737, at page 741, 98 L.Ed. 911 Mr. Justice Frankfurter, re-

ferring to the exceptions herein under discussion, expressed this thought:

"Congress did not provide that the three types of situations it enumerated in the 1951 corrective statute should be the only instances where membership is *so nominal as to keep an alien out of the deportable class.*"

And, 347 U.S. on page 529, 74 S.Ct. on page 741:

"And even if petitioner was unaware of the Party's advocacy of violence, as he attempted to prove, the record does not show a relationship to the Party *so nominal* as not to make him a 'member' within the terms of the Act." (Italics ours.)

Counsel for the applicant cites and relies entirely upon decision of the United States Supreme Court in Rowoldt v. Perfetto, 355 U.S. 115, 78 S. Ct. 180, 2 L.Ed.2d 140, involving provisions in the Act of 1951 identical with the statute now under consideration.

In that case an alien was ordered deported for past membership in the Communist Party, the trial judge on a habeas corpus hearing denied him relief, and on appeal this judgment was affirmed. On review, however, the Supreme Court ruled that the evidence, consisting entirely of petitioner's own testimony, was "too insubstantial to establish that petitioner's membership was the kind of meaningful association required by § 22 as amended by the Act of March 28, 1951, to support an order of deportation." In that case the alien testified that his membership in the Communist organization was obtained in order to get food, but he admitted that he had operated for a year in behalf of the Communists a book store which was "an official outlet for Communist literature." The Supreme Court reversed the judgment of the District Court, using this language:

"We cannot say that the unchallenged account given by petitioner of his relations to the Communist

Party establishes the kind of *meaningful association* required by the alleviating Amendment of 1951 as expounded by its sponsor, Senator McCarran, and his legislative collaborator, Senator Ferguson * * From his own testimony in 1947, which is all there is, the dominating impulse of his 'affiliation' with the Communist Party may well have been wholly *devoid of any 'political' implications.*" (Italics ours.)

We therefore give to the statute in question a liberal interpretation and rule that the intent and purpose of Congress in the enactment of the aforesaid statute demands a ruling by this court to the effect that applicant's membership in the Communist dominated youth organization, within ten years of his application for naturalization, under the circumstances then existing brings the applicant within the exclusions provided in said statute, and that his application must be granted.

Our ruling is based upon what we consider a proper construction of the exceptions contained in the statute, to-wit, that applicant's affiliation was for the purpose of obtaining the necessities of life, and we do not find it necessary to decide whether Congress intended the exclusions to cover any purposes other than those enumerated. On the other hand it should be noted that Congress, with many of the circumstances enumerated being within their knowledge, made their exceptions rather specific. Membership in the Communist Party was not restricted to "meaningful membership" nor was "nominal membership" excepted.

The case is therefore remanded to the District Court for such further action as is consistent herewith, judgment reversed.

JONES, Circuit Judge (dissenting).

It seems to me that it has been established that the appellant knowingly joined the Communist Party and in doing so he knew it was a distinct and active political organization; and his membership was more than nominal. Commendable as is the desire for a college education, the hope of procuring thereby a higher standard of living does not meet the test of getting the necessaries of life. I think that the case is controlled by Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911, rather than by Rowoldt v. Perfetto, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed.2d 140. Therefore I dissent.