Hans E. **LANGHAMMER,** Plaintiff,
Appellant,

v.

James A. **HAMILTON,** District Director Immigration and Naturalization Service, Defendant, Appellee.

No. 5862.

United States Court of Appeals
First Circuit.

Heard Oct. 6, 1961.

Decided Nov. 3, 1961.

Stewart J. Stowell, East Hartford, Conn., for appellant.

James C. Heigham, Asst. U. S. Atty., Boston, Mass., with whom W. Arthur Garrity, Jr., U. S. Atty., Boston, Mass., was on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an action under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., and the Declaratory Judgment Act, 28 U.S.C.A. § 2201 et seq., to review a final order of deportation. Appellant's complaint was ordered dismissed by the United States District Court for the District of Massachusetts and he now appeals to this court.

Appellant is a citizen of Germany who entered the United States as a quota immigrant in October 1953. With the exception of one year during which he returned to Germany to complete medical

studies at the University of Heidelberg, and a few brief visits to relatives in Canada, appellant has continuously resided here since that date. He is married to a United States citizen and is the parent of one child born in this country. He had been previously married and divorced. He is a practicing physician, engaged in psychiatric work, and currently resides in Concord, New Hampshire.

Appellant was born in 1924 at Roitzsch, a town located in the area now designated as East Germany. He was reared and educated there, graduating from high school. As a child he was conscripted into the Hitler Youth Movement and thereafter into the German Army. Shortly after joining the army his unit was captured by the Russians and he was held as a Russian prisoner of war from 1944 to 1948. Upon returning to Roitzsch after his release by the Russians, he found the Communists to be in control of the life and the economy of that village. Shortly thereafter he became a member of the Communist Party of East Germany and simultaneously therewith enrolled in the University of Halle, where he embarked on a program of medical studies. He continued his studies at the University and his Communist membership until July 1952.

At this time, convinced that Communist authorities were increasingly aware of his tepid fervor for their cause, appellant fled to Western Germany. In October of 1952 he submitted an application for registration of a visa with the American Consul at Frankfurt and approximately a year later, a visa was issued to him. On his application for registration as an immigrant, appellant made no answer to an item which required applicants to "List all political parties or movements, or affiliated or subsidiary organizations, of which you have ever been a member." Moreover, there was a similar lack of disclosure to a like question on appellant's visa application.

After a hearing before a Special Inquiry Officer of the Immigration and Naturalization Service at which appellant was present with counsel and testified freely, he was found to be deportable on two grounds: (1) that at the time of entry he was a member of one of the excludable classes of aliens, to wit, an alien who had been a member of the Communist Party of a foreign state and (2) that at the time of entry he was an immigrant not entitled to enter because his immigration visa had been secured by fraud or willful misrepresentation of a material fact. On appeal, the findings and order of the Special Inquiry Officer were affirmed by the Board of Immigration Appeals. Thereafter, appellant sought review of this decision in the United States District Court for the District of Massachusetts and he now appeals from the judgment of that court dismissing his complaint.

Here, as below, appellant urges three principal contentions. Initially he challenges the finding of deportability based on Communist membership on two grounds: (a) that his membership was not proved by reasonable, substantial and probative evidence and (b) that if proven, his membership was involuntary by operation of law as solely motivated by the necessity of obtaining employment, food and other essentials of living within the provisions of 8 U.S.C.A. § 1182(a) (28) (I). Secondly, he disputes the finding of deportability based on fraud and misrepresentation on the ground that the record discloses no willful misrepresentation of a material fact. His third assertion of error is predicated on the basis that the appropriate administrative authorities failed to consider certain discretionary relief to which he was entitled, due to his recent marriage to a United States citizen—which marriage occurred after both the Special Inquiry Officer and the Board of Immigration Appeals had rendered their decisions and after a warrant was issued for his deportation.

■ Appellant's argument that his membership in the Communist Party was not proved with reasonable, substantial and probative evidence is grounded on the decision in Rowoldt v. Perfetto, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed.2d 140 (1957). In that case, as here, the finding of a

Communist membership was based exclusively on the alien's own testimony. There the testimony indicated that while the alien had been a member of the Communist Party for almost a year, his only active work for the party consisted in the operation of a bookstore for a short period. This apart, his status within the organization appeared to be relatively innocuous and as the Court pointed out " * * * may well have been wholly devoid of any 'political' implications." 355 U.S. 115 at 120, 78 S.Ct. at 183. In holding that the evidence thus elicited was insubstantial to support the order of deportation the Court stated: "Bearing in mind the solidity of proof that is required for a judgment entailing the consequences of deportation, particularly in the case of an old man who has lived in this country for forty years, cf. Ng Fung Ho v. White, 259 U.S. 276, 284 [42 S.Ct. 492, 66 L.Ed. 938], we cannot say that the unchallenged account given by petitioner of his relations to the Communist Party establishes the kind of meaningful association required by the alleviating Amendment * * *." Id. 355 U.S. at 120, 78 S.Ct. at 183.

Appellant now seeks to derive from the holding in Rowoldt, a rule of universal application that, in all cases, the testimony of an alien, standing alone, is insufficient to establish the requisite "meaningful association" essential to sustain a deportation order based on Communist membership.

■ We agree with the court below that Rowoldt established no such general rule and was based squarely on the specific facts then before the Court. This is obvious from the above-cited language where the Court found that the "account given by *petitioner* of *his* relations" was insubstantial. Id. 355 U.S. at 120, 78 S.Ct. at 183. (Emphasis supplied.) Accordingly, we believe that the testimony of an alien may well in and of itself establish the requisite "membership" if it depicts a party relationship sufficiently viable and purposeful. We believe that an analysis of the testimony here depicts just such a relationship.

In this case the testimony of the alien indicated and the Special Inquiry Officer found that appellant was a member of the East German Communist Party from April 1948 until July 1952; that he maintained membership in the Free German Youth Organization, a Communist dominated group from 1949 to 1952; that during this same period he held membership in the Society of German-Soviet Friendship, an organization whose aim was to foster immigration from Germany to Russia and, finally, that he was a member of the Free German Trade Union, an organization dominated by East German Communist Party members. It was further found that he served as Organizational Secretary for the East German Communist Party at a school in Halle, Germany, and also held the office of Secretary of the Medical Students Branch of The Communist Party at the University of Halle. In his capacity as Organizational Secretary of the East German Communist Party at the University, it was found that his duties included arranging meetings, procuring speakers to address and lead the meetings, making records reflecting the progress of the group and collecting dues. In his position as Secretary of the Medical Students Branch, the record discloses that appellant's duties extended to arranging meetings and insuring that monies collected were forwarded to the proper persons and places. Finally, it was found that at all relevant times, appellant paid dues and had a Communist Party membership card.

On this record we are not at all hesitant to affirm the conclusion of the district court that appellant's membership in the Communist Party of East Germany was proved with reasonable, substantial and probative evidence within the meaning of 8 U.S.C.A. § 1252(b) (4). Unlike the record in Rowoldt we can say that "the unchallenged account given by petitioner of his relations to the Communist Party establishes the kind of meaningful association" contemplated by the Act.

While freely admitting the foregoing wide range of activities on behalf of the

Communist Party, appellant maintains that his membership must be excused as involuntary under the provisions of 8 U.S.C.A. § 1182(a) (28) (I). Under these provisions an alien applicant for admission to the United States is excused from prior Communist Party membership if "such membership * * * was involuntary * * * or for purposes of obtaining employment, food rations, or other essentials of living and where necessary for such purposes * * *."

■ In seeking to bring himself within the scope of these exceptions, appellant has consistently maintained and we are willing to accept it as a fact, that his sole reason for joining the Communist Party was to obtain the advantages of a college education. Owing to the status of appellant's family in his village, it appears that the only way through which he might receive a university training was to join the Communist Party. Faced with the decision of foregoing a college degree or becoming a member of the Communist organization, he chose the former while still, in appellant's words, not becoming a Communist "by heart." He now argues that as to him, a program of advanced education—in this case a medical education—was an "essential of living" sufficient to render exculpatory his Communist membership.

The district court rejected this contention. While recognizing that the Supreme Court in Galvan v. Press, 347 U.S. 522 at 527, 74 S.Ct. 737 at 741, 98 L.Ed. 911 (1954) noted that "Congress did not provide that the three types of situations it enumerated in the 1951 corrective statute should be the only instances where membership is so nominal as to keep an alien out of the deportable class," the district judge rejected the appellant's contention that the program of study upon which he embarked was within the spirit of the statutory exceptions. He said: "I find no basis and plaintiff offers none to support the argument that Congress had in mind the nicety of a medical education when it used the phrase 'employment, food rations, or other essentials of living.' So to construe this language would be to strain the principle of *ejusdem generis* well beyond the breaking point." 194 F. Supp. 854, at 857 (1961).

Here on appeal, appellant places great reliance on the recent decision in Grzymala-Siedlecki v. United States, 285 F.2d 836 (5 Cir., 1961), as sustaining the position that a college education was an essential of life within the meaning of the alleviating exceptions. We believe, however, that Grzymala-Siedlecki involved materially different facts. In that case the Court of Appeals for the Fifth Circuit had occasion to consider the precise statutory language at issue here in the context of a naturalization proceeding. In that case the petitioner had been a member of a Communist controlled organization while at the Polish Naval Academy. The court held that this membership was excused. It refused to pass on the question of whether "an education beyond the high school level is included in the phrase 'other essentials of living,' for under the facts in this record he could not earn his livelihood in Poland without the additional education he sought." Id. at 839. It thus found that there the alien's situation fitted within the "employment" exception to the statute. While the instant record is somewhat ambiguous on the point, we do not understand the present appellant to maintain that all avenues of employment were foreclosed to him in East Germany but rather, in the absence of a Communist membership, the doors to all institutions of higher learning were effectively barred. This point is not essential to our decision, however, for in Grzymala-Siedlecki as the court stressed in considering the actions of the alien there involved:

"* * * Enrollment in said Naval Academy however, automatically carried with it membership in a Polish youth organization entitled Youth Zeiazek Mlodziesy Polakiej, also known as ZMP. He signed no application for membership, received no membership card and was never sworn in. His only participation in its activities was compulsory attendance at bi-monthly meetings while a

student. At a few of the meetings he was required to make a brief talk to stimulate discussion, and then he chose economics as his subject." Id. at 838.

In marked contrast to the relatively quiescent petitioner before the court in the above-cited case, here the appellant was a member of three Communist controlled organizations in addition to the Party itself. He not only carried a membership card and paid dues but served as an officer of two different Party units. In the latter capacities he organized meetings, arranged for speakers, maintained records and collected the dues of others. Furthermore, it does not appear from the record that attendance at the University of Halle required membership in the Free German Youth Group, the Society of German Soviet Friendship or the Free German Trade Union. It is thus obvious that there is little similarity between the lethargic and militarily prescribed role played by the alien in Grzymala-Siedlecki and the wide range of appellant's activities here.

Consequently on the present record it is unnecessary for us to determine whether or not in an appropriate case a program of advanced study might fall within the scope of the exculpatory exceptions of the statute. We need only say here that no immunity initially conferred by student status could survive the wide range of concomitant Party "extra-curricular" activities which appellant demonstratively indulged in during his university days—regardless of the alien's avowed subjective mental reservations to the contrary. Thus we hold that appellant's Communist membership was not excused under the provisions of 8 U.S.C.A. § 1182 (a) (28) (I).

We turn then to appellant's contention that he is not deportable as an alien whose visa was procured by fraud or by willful misrepresentation of a material fact. 8 U.S.C.A. § 1182(a) (19) excludes "any alien who * * * has procured a visa * * * by fraud, or by willfully misrepresenting a material fact." Should an alien thus situated succeed in entering the United States, he is deportable under 8 U.S.C.A. § 1251(a) (1). As noted above, such visa fraud was one of the two bases for the order of the Special Inquiry Officer in this case. The subject matter which appellant was found to have concealed related to his membership in the East German Communist Party and related organizations. Appellant contends that this finding is not supported by reasonable, substantial and probative evidence.

Appellant admitted that he made no notation of his Communist activities on the application for registration because he didn't want to be "stigmatized". However, he has consistently maintained that at the time he was completing these documents he orally informed the appropriate authorities at the American Consulate of his past Communist associations. A communique from the Consulate at Frankfurt, adduced at the hearing before the Special Inquiry Officer, disclosed that according to its records the fact of membership had not been revealed. Moreover, the Vice Consul unequivocally asserted that the appellant did not reveal his membership in any political organizations at the time of application or at any other time. On these facts the Special Inquiry Officer found that appellant concealed his membership in the East German Communist Party and related organizations. We cannot say that the record fails to support this finding of concealment. To do so would require a determination that a state department official, having knowledge of a fact which may have rendered an alien excludable as a member of a proscribed class, failed in his duty to bring this fact to light. In the absence of stronger corroborating facts than appear on this record, this we are unwilling to do.

Moreover, there is little question that the fact of membership in the Communist Party was an eminently material matter, since its mere disclosure would have revealed that the alien was a member of a class of aliens excluded from admission

to the United States by law. 8 U.S.C.A. § 1182(28) (C).

■ Appellant has urged that if it were now determined that his membership in the Communist Party was excused as "involuntary" then this fact would retroactively render his failure to disclose the fact of membership non-material, regardless of the deliberateness of the initial lack of disclosure. In essence he argues that a misrepresentation is not material unless the alien would definitely have been excluded on the true facts. We do not believe this to be the law and, consequently, had we now agreed that appellant's membership was involuntary, such determination would not have operated *nunc pro tunc* to render his omission non-material.

In Chaunt v. United States, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed. 120 (1960), the Supreme Court addressed itself to the question of the materiality of misrepresentations in a denaturalization proceeding. There the Court indicated that the facts concealed would be regarded as material if either they "would have warranted denial of citizenship" or "their disclosure might have been useful in an investigation possibly leading to the discovery of other facts warranting denial of citizenship." Id. 364 U.S. at 355, 81 S.Ct. at 151. There can be no question that in the instant case had the appellant noted the facts of his widespread Communist membership, the resultant inquiry—foreclosed by his lack of such a notation—would most assuredly have unearthed facts *warranting* his exclusion regardless of the ultimate determination of this question when all the evidence was in.

The vice inherent in the position for which appellant contends has been aptly illumined in the case of Ganduxe y Marino v. Murff, 183 F.Supp. 565, 567 (S.D. N.Y.1959) aff'd per curiam Marino v. Esperdy, 278 F.2d 330 (2 Cir. 1960) where the court stated: " * * * A decision that an alien may make a false statement in his application for a visa in order to avoid the raising of a substantial question as to his eligibility and then, if he is caught in the false statement after having successfully choked off investigation, may try out his eligibility just as if nothing had happened would, it seems to me, be an invitation to false swearing."

For the above reasons we believe that the misrepresentations were abundantly material and their omission supports the second basis of the Order of Deportation.

Appellant finally contends that the appropriate administrative authorities erred in failing to consider certain discretionary relief to which appellant was eligible by virtue of his marriage to an American citizen. The statutory language upon which appellant seeks to rely is contained in 8 U.S.C.A. § 1251a which provides in pertinent part as follows:

"The provisions of section 1251 of this title relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as (1) aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation, * * * shall not apply to an alien *otherwise admissible at the time of entry* who (A) is the spouse * * * of a United States citizen * * *." (Emphasis supplied.)

■■ We find no merit in appellant's argument for on this record we cannot say that the immigration authorities failed to consider appellant's application for discretionary relief. Moreover, under the plain words of the statute, to be entitled to relief the alien must be "otherwise admissible at the time of entry." That is to say the alien would be otherwise admissible save for his fraud or misrepresentation of the material fact. However, here appellant's membership in the Communist Party at the time of his entry foreclosed his coming within the class of persons described in the statute, and thus he cannot qualify for relief by reason of his marriage to an American citizen.

Judgment will be entered affirming the judgment of the district court.