MATTER OF PUST

In Deportation Proceedings

A-11228634

*Decided by Board June 8, 1965*

Respondent, who did not participate in any political activities in conjunction with his membership in the Yugoslavian Communist-controlled "People's Youth" (Narodna Omladina), and its subgroups, and whose membership was more or less automatic as a part of his attendance in the Yugoslavian grade school and high school, commenced when he was about 11 years of age while in grade school, and enabled him to attend school tuition free, which otherwise would have been financially impossible, is eligible for the exemption contained in section 212(a)(28)(I)(i), Immigration and Nationality Act, since his membership, of a passive and quiescent nature, commenced when he was under 16 years of age and was for the purpose of obtaining an essential of living, to wit, a grade school and a high school education.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained longer—nonimmigrant.

The case comes forward on appeal by the trial attorney from the decision of the special inquiry officer entered February 12, 1965, ordering that the respondent's application for adjustment of status pursuant to the provisions of section 245 of the Immigration and Nationality Act, as amended, be granted.

The record relates to a native and citizen of Yugoslavia, 27 years old, male, who last entered the United States at the port of New York on the SS "Vulcania," and was admitted as a visitor for pleasure. His status was subsequently changed to that of a student and he was authorized to remain in the United States until April 20, 1963. The respondent has thereafter remained without authority and is concededly deportable.

The respondent has applied for adjustment of status pursuant to the provisions of section 245 of the Immigration and Nationality Act, as amended. He married a lawful permanent resident of the United States on September 7, 1963 and a third preference quota

visa petition under the Yugoslav quota was approved September 17, 1963 and is immediately available. He is otherwise statutorily eligible for adjustment of his status under section 245 if he is not eligible for adjustment of his status under section 245 if he is not inadmissible to the United States in connection with membership in a Communist controlled youth organization in Yugoslavia. This latter possibility presents the issue in the case.

The testimony of the respondent is that as an incidence of school attendance in Yugoslavia it was necessary to become a member of the various groups which were controlled by the Communist party. The name of the over-all youth organization was Narodna Omladina or People's Youth. At the lowest level, in grammer or public school, the respondent had belonged to the Pioneers Organization and when he started high school at the age of 14 in 1952 he automatically became a member of another youth organization known as Solska Razredna Skupnost. He testified that membership in this latter organization was not precisely voluntary because upon reaching the age of 14 or 16 years all the pupils in the school belonged to that organization because through it they enjoyed certain activities like sports or dramatic clubs and in addition, their tuition was paid. The respondent added that it was financially impossible for him to attend school without belonging to the organization and that those who did not join the organization had financial difficulties unless their parents were independently wealthy. He testified that he became president of the Solska Razredna Skupnost Organization, although his age at the time he became president is not disclosed, because of his popularity in various other clubs, such as dramatic and mountain climbing, and he was elected on the basis of his popularity. He asserted that his election had nothing to do with the Communist party but the school officials controlled the students and that since he was a good student and was popular, he was chosen president. The respondent testified that this organization never held political meetings, but that the meetings which were held were in the nature of seminars in which certain students helped other students in their studies and that he was never asked to take part in elections of any type or to influence people to vote in any certain way. Furthermore, he did not take part in any political rallies and that several times a year all school organizations, unions and government employees turned out to provide demonstrations for the arrival of an important person like the president of a foreign country who came into town for special meetings.

The respondent testified that in his case it would have been impossible for him to study at the school he was attending if he had

not belonged to that school organization because he was without resources of his own to continue his studies. He testified that at no time did he make any public statements or attend meetings of the Communist party, that the meetings of his high school organization were not political but were strictly concerned with school matters and meetings among friends. He testified that for a year he was not a member of the organization and as a result lost his scholarship. The respondent testified that he would have had an extremely difficult time obtaining any kind of employment if he had not obtained the education he did while in Yugoslavia.

There has been introduced into evidence an order of the Assistant Commissioner, Examinations Division, Immigration and Naturalization Service dated August 8, 1957 to the effect that the respondent is a voluntary member of the People's Youth and is the president of this organization in the high school he attends; that the People's Youth organization at his school is not Communist dominated as he dominates the organization and he himself is not a Communist. The American consular authorities supplied information to the effect that the admission of the respondent into the United States would be in the public interest because he is an intelligent, alert observer, pre- disposed toward the Western concepts of freedom of inquiry, and would be an effective propagandist on his return; that the Department of State has made a check of the records of the national security agencies and these have disclosed no additional derogatory information; and that the Department concurs in the consular officers' recommendation. The Assistant Commissioner ordered the admission of the respondent pursuant to the authority contained in section 212(d)(3) of the Immigration and Nationality Act, if otherwise admissible than under section 212(a)(28) of that Act, subject to revocation at any time in the discretion of the Attorney General. Section 212(a)(28) refers to aliens who are excludable because of certain specified connections with the Communist party or other subversive groups.

In reference to this order of the Assistant Commissioner which granted him a waiver under section 212(d)(3) the respondent explained about this "voluntary" membership in the People's Youth: that at that time he was in Belgrade, Yugoslavia and it was impossible to say that he had been forced into this organization because they had been told in school that they were voluntary members and nobody even thought about having been forced into this organization. Furthermore, because he was a bit scared of what would happen if they refused his application to become a visitor in the United States,

he gladly put the information down that he was a voluntary member but that everybody knows now that if you are not a Communist then you are not a voluntary member of any kind of organization in Yugoslavia. The respondent conceded that his membership in the youth organization in high school may have continued because he was not discharged as a member of the Narodna Omladina even though he attended a technical school after his graduation from high school.

The respondent came to the United States to visit an aunt who considered adopting him. His mother and brothers reside in Yugoslavia. He married a permanent resident alien on September 7, 1963. His wife is employed as an operator of an I.B.M. machine for the May Company. He joined a Catholic students' organization in the United States and during his third year of membership was elected president. He stated that this organization publishes the real truth and its meaning for the people in Yugoslavia, that it is against communism and that through this organization he is actively fighting communism because the organization publishes lots of books and other sources of material on the true meaning of the Slovenian people, that it collects money for the ministry in Austria which educates young priests who are closest to the Yugoslav border and who work for the anti-Communist movement there. In addition, the organization supports poor priests in his home town and throughout Slovenia.

The issue is whether the respondent's case falls within the provisions of section 212(a)(28)(I)(i). This section provides that an alien within any of the classes defined in the prior subparagraphs of section 212(a)(28) because of membership in or affiliation with a subversive party or organization, may, if not otherwise inadmissible, be admitted into the United States if he establishes to the satisfaction of the Attorney General when applying for admission to the United States and the Attorney General finds that such membership or affiliation is or was involuntary, or is or was solely when under sixteen years of age, by operation of law, or for purposes of obtaining employment, food rations, or other essentials of living and when necessary for such purposes.

One of the cases relied upon to support the appeal from the decision of the special inquiry officer is *Langhammer v. Hamilton*, 194 F. Supp. 854, affirmed 295 F.2d 642 (1st Cir., 1961). In that case the alien maintained and the Circuit Court was willing to accept as a fact, that his sole reason for joining the Communist party was to obtain the advantages of a college education; that in his case a

medical education was an "essential of living" sufficient to render exculpatory his Communist membership. However, pointing out that Langhammer was a member of three Communist controlled organizations in addition to the Communist party of East Germany itself, not only carried 'a membership card and paid dues but served as an officer of two different Party units in which latter capacity he organized meetings, arranged for speakers, and maintained records and collected the dues of others, the court found it unnecessary to determine whether or not in an appropriate case a program of advanced study might fall within the scope of the exculpatory exceptions of the statute and held that no immunity initially conferred by student status could survive the wide range of Communist party "extra-curricular" activities which appellant demonstratively indulged in during his university days, regardless of the alien's avowed subjective mental reservations to the contrary and concluded that appellant's Communist membership was not excused under the provisions of 8 U.S.C. 1182(a) (28) (I).

The court in the *Langhammer* case commented upon the decision in *Grzymala-Siedlecki v. United States*, 285 F.2d 836 (5th Cir., 1961), in which the alien by virtue of enrollment in the Polish Naval Academy automatically obtained membership in a Polish Communist youth organization; he signed no application for membership, received no membership card and was never sworn in; his only participation in activities was compulsory attendance at bimonthly meetings while a student and at a few of the meetings he was required to make a brief talk to stimulate discussions and then he chose economics as his subject. The court in the *Langhammer* case pointed to the marked contrast between the relatively quiescent petitioner in the *Grzymala-Siedlecki* case and the appellant in the *Langhammer* case, stating that it was obvious there was little similarity between the lethargic and militarily prescribed role played by the alien in the former case and the wide range of appellant's activities in the latter case.

In the instant case the respondent's activities in the Yugoslavian Communist controlled organization, the People's Youth, also known as Narodna Omladina and its subgroups, Solska Razredna Skupnost and the Pioneers, commenced when the respondent was about 11 years of age while in grade school. As a part of his attendance in the Yugoslavian school, he automatically became a member of these youth organizations. Although he was elected as president of the Solska Razredna Skupnost shortly after commencing high school, that election appears to have been due to his popularity among his

friends and his membership in the latter organization was based upon an opportunity to engage in certain activities like sports or dramatic clubs and in order to have the expenses of attending school paid. During the year when he was not a member of the youth organization, his father was required to pay or refund the tuition. He has disclaimed any ideological sympathy with communism and indeed because of his Catholic faith, he may very well have been opposed to any Communist participation. The organization never held any political meetings but only meetings which helped to assist other students in their studies and he was never asked to take part in elections of any type or to influence people to vote in any certain way. He did not participate in any political rallies. The respondent's membership in these youth organizations was more or less automatic and enabled good students to attend school tuition-free.

This passive and quiescent membership by the respondent in the named youth organizations commenced when he was under 16 years of age and was for the purpose of obtaining an essential of living, to wit, a grade school or a high school education. The respondent's membership was voluntary only in the sense that it was a necessary concomitant of attendance at grade school and high school and there is no evidence of any active participation by the respondent in any political Communist activities of the organization. There is a marked resemblance in the type of membership of the respondent in this Yugoslavian Young People's Organization to the membership referred to by the Circuit Court in the case of *Grzymala-Siedlecki* v. *United States* in contrast to the membership in the *Langhammer* case [1] where the alien actively participated in Communist extracurricular activities. We agree with the special inquiry officer that the respondent falls within the exculpatory provisions of section 212(a)(28)(I)(i) of the Immigration and Nationality Act.[2] We find the respondent should be granted adjustment of status pursuant to the provisions of section 245 of the Immigration and Nationality Act, as amended. The appeal by the trial attorney will be dismissed.

ORDER: It is ordered that the appeal by the trial attorney from the decision of the special inquiry officer dated February 12, 1965 granting adjustment of status pursuant to the provisions of section 245 of the Immigration and Nationality Act, as amended, be and the same is hereby dismissed.

---

[1] 295 F.2d 642.

[2] See *In re Ferenci's Petition*, 217 F. Supp. 714 (E.D. Pa. 1963); *Petition of Bartok*, No. 248011, S.D. Cal. (September 24, 1964).