**PETITION for Naturalization of Ljubivoje KLAJIC.**

**No. 263003.**

United States District Court
Central District California.

Nov. 10, 1966.

## DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW and JUDGMENT AND ORDER

Contested naturalization proceeding on petition of former member of Narodna Omladina Jugoslavije (People's Youth of Yugoslavia). Recommendation by Immigration and Naturalization Service that petition be denied upon grounds that (1) petitioner's membership in the Narodna Omladina Jugoslavije (People's Youth of Yugoslavia) from 1950 to 1958, bars petitioner from citizenship pursuant to the provisions of Section 313 of the Immigration and Nationality Act, 8 U.S.C.A. § 1424; and (2) that petitioner had failed to establish lawful admission to the United States for permanent residence as required by Sections 316 and 318 of the Immigration and Nationality Act, 8 U.S.C.A. §§ 1427 and 1429.

Recommendation disapproved. Petition granted and petitioner ordered admitted to citizenship upon taking the prescribed oath.

Mathew M. Pendo, Los Angeles, Cal., and Griffin & Griffin, by Richard T. Griffin, Pasadena, Cal., for petitioner.

Robert T. Griffin, designated Naturalization Examiner, Los Angeles, Cal., for Immigration and Naturalization Service, United States Department of Justice.

HAUK, District Judge.

Petitioner, a native and citizen of Yugoslavia, seeks citizenship under Section 316(a) of the Immigration and Nationality Act, hereinafter referred to as "the Act", 8 U.S.C.A. § 1427(a).[1] In essence this permits the naturalization of an alien who, after being lawfully admitted for permanent residence, has resided continuously in the United States for at least five years, has been a person of good moral character during such period, and is disposed to the good order and happiness of the United States.

After the filing of appropriate documents and an administrative hearing, the matter is now before this Court on final hearing, pursuant to Section 336 of the Act, 8 U.S.C.A. § 1447.

Conceding that petitioner has met all of the other requirements of the Act, the Government opposes citizenship and recommends denial for two reasons:

(1) Petitioner's membership in the Narodna Omladina Jugoslavije ("People's Youth of Yugoslavia") and, what is claimed by the Government, his alleged chairmanship of that organization with full appreciation of the political significance and the Communist affiliation of that organization, constitute proscribed membership within the meaning of Section 313(a) and (c) of the Act, 8 U.S.C.A. § 1424(a) and (c);[2] and

---

1. "Sec. 1427(a) No person, except as otherwise provided in this subchapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence within the United States for at least five years and during the five years immediately preceding the date of filing his petition has been physically present therein for periods totaling at least half of that time, and who has resided within the State in which the petitioner filed the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the period referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

2. "Sec. 1424(a) Notwithstanding the provisions of Section 405(b) of this Act, no person shall hereafter be naturalized as a citizen of the United States—* * *
   "(2) who is a member of or affiliated with (A) the Communist Party of the United States; (B) any other totalitarian party of the United States; (C)

(2) Because in failing to disclose his membership in the Narodna Omladina Jugoslavije at the time he received his Immigrant Visa, petitioner has failed to establish his lawful admission to the United States for permanent residence.

The determination of these two issues depends upon the facts as well as the law. After thorough examination of both, we proceed to our findings of fact, conclusions of law and judgment, all of which are in favor of petitioner, granting his petition and admitting him to citizenship upon his taking the prescribed oath.

## FACTS

Petitioner was born in Belgrade, Yugoslavia, on July 16, 1935. When he was fifteen years of age he commenced attendance at an industrial school in Yugoslavia to learn the trade of aircraft mechanic, and incidental to his attendance at the school he became a member of the Narodna Omladina Jugoslavije. The petitioner testified that he was not asked whether he wanted to join the organization, and, as far as he knew, all students who attended the school automatically became members thereof.

After completing his industrial schooling, and immediately after he became eighteen years of age, petitioner attempted to leave Yugoslavia without permission of the government, for which he was arrested and put in jail for several months. Following his release from jail he obtained employment as an aircraft mechanic at the factory where his earlier industrial training was achieved. At this time, in addition to continuing his membership in the Narodna Omladina Jugoslavije, he was required to join a government-sponsored trade union, Sindikata, membership in which he continued until he left Yugoslavia in 1958.

Petitioner held various jobs in the Belgrade area, including work as a day laborer on a construction project for several months. At all times while he was employed he was a member of the Narodna Omladina Jugoslavije.

Because of difficulty encountered in holding a job near Belgrade, during which time his membership in the Narodna Omladina Jugoslavije was of a passive and quiescent nature, petitioner moved to the City of Subotica in 1957, where he obtained employment in a bicycle factory. When he was again issued membership in that factory's branch of the Narodna Omladina Jugoslavije, he began regularly to attend meetings of the organization, in order to avoid further employment difficulties.

Petitioner was well liked by his co-workers, and in May, 1958, he was selected as incoming chairman of the branch of Narodna Omladina Jugoslavije when the then chairman was elevated to a higher post to be assumed later that year. At the time petitioner was selected for the chairmanship, he had already made application for a passport to enable him to attend the Worlds Fair being held at Brussels, Belgium. Petitioner testified that he agreed to accept the position of chairman of the Subotica bicycle factory branch of Narodna Omladina Jugoslavije because he feared that his refusal would preclude his obtaining the necessary documents to leave Yugoslavia and enter Belgium. During the three or four meetings held after petitioner's selection as the incoming chairman, he sat in the front of the room, along with the then chairman, to learn the rules and procedures of the job.

Petitioner departed from Yugoslavia in August, 1958, prior to being formally installed or taking on the duties of the branch chairmanship.

Petitioner's testimony, corroborated by the testimony of an expert witness

the Communist Political Association; (D) the Communist or other totalitarian party or any State of the United States, of any foreign state, or of any political or geographical subdivision of any foreign state; (E) any section, subsidiary, branch, affiliate, or subdivision of any such association or party; * * *."

on his behalf, clearly demonstrates that the Narodna Omladina Jugoslavije functioned primarily as an organization to foster social and athletic events, and that membership therein included all students from approximately eleven to fifteen years of age as well as youths who worked from ages fifteen to twenty-five.

We now examine the contentions of the Immigration and Naturalization Service in contesting petitioner's citizenship and recommending its denial.

### FIRST ISSUE:

### "MEMBERSHIP IN COMMUNIST AFFILIATED ORGANIZATION"

The Government contends that petitioner's membership in the Narodna Omladina Jugoslavije precludes his naturalization by virtue of Section 313 of the Act, 8 U.S.C.A. § 1424, footnote 2 supra, and that such membership did not come within any of the exemptions set forth in subsection (d) thereof.

### I

In order to constitute an organization, membership in which would disqualify the petitioner from citizenship, the Narodna Omladina Jugoslavije must be a section, subsidiary, branch, affiliate or subdivision [3] of the Communist Political Association [4] or the Communist or other totalitarian party of a foreign state.[5]

■ It seems to us that the word "affiliate" as used in the context of the statute [6] means a subdivision or branch so affiliated that it is in essence part of the Communist Party itself. But the evidence before us indicates that the Narodna Omladina Jugoslavije may not be that kind of an organization. Our conclusion is confirmed by the findings of the U. S. Board of Immigration and Naturalization Appeals in Matter of

Pust decided on June 8, 1965, Case No. 1482, which seems to hold that, while Narodna Omladina Jugoslavije is a "Communist controlled organization", it is not that kind of a section, subsidiary, branch, subdivision or affiliate of the Communist Party of Yugoslavia as is, for instance, "SKOJ", the "Communist Youth Union of Yugoslavia", which is an integral part of the Communist Party.

But even if the Narodna Omladina Jugoslavije is a proscribed organization within the purview of Section 313(a) of the Act [7] as an affiliate of the Communist Party of Yugoslavia, nevertheless the evidence before us and the applicable case law on the subject compel the additional determination that the petitioner's membership therein was excusable under the law.[8] His membership was involuntary and was solely for the purposes of obtaining employment and other essentials of living, including a basic education that would make him employable.

We have found only two cases that appear to apply to the factual situation before us: Grzymala-Siedlecki v. United States, 285 F.2d 836 (C.A.5th 1961), and Langhammer v. Hamilton, 194 F.Supp. 854 (D.Mass.1961), affirmed 295 F.2d 642 (C.A.1st 1961).

In *Langhammer*, the Court of Appeals of the First Circuit affirmed a District Court decision dismissing the alien's complaint in which he sought review of a final order of deportation under the provisions of § 212(a) (28) (C), and (I) of the Act,[9] which provisions appear to be similar, if not virtually identical, to the provisions of § 313(a) (2).[10]

The Court found that the alien in *Langhammer* was a member of the East German Communist Party from April, 1948 to July, 1952; that he was a member of the Society of German-Soviet

---

3. 8 U.S.C.A. § 1424(a) (2) (E).

4. 8 U.S.C.A. § 1424(a) (2) (C).

5. 8 U.S.C.A. § 1424(a) (2) (D).

6. 8 U.S.C.A. § 1424(a) (2) (E).

7. 8 U.S.C.A. § 1424(a) (2) (C), (D), (E),

8. 8 U.S.C.A. § 1424(D).

9. 8 U.S.C.A. § 1182(a) (28) (C), (I).

10. 8 U.S.C.A. § 1424(a) (2).

Friendship from 1948 to July, 1952; that he was a member of the Free German Youth from 1949 or 1950 until July, 1952; that he was Organizational Secretary for the East German Communist Party at a school in Halle, Germany; and that he was Secretary of the Medical Students Branch of the Communist Party. As Organizational Secretary of the East German Communist Party at the University of Halle, his duties included making records of the progress of the group, arranging meetings, arranging for speakers to lead the meetings, and collecting dues. And as Secretary of the Medical Students Branch, his duties included arranging for meetings and seeing that monies collected were sent to the proper persons or places. He also paid dues to the Communist Party and carried a Communist Party membership card.

He claimed that his membership was involuntary because his sole reason for joining the Communist Party was to obtain the advantages of a college education and that a medical degree was an "essential of living" within the exemptions or exceptions of Section 212(a) (28) (I) of the Act. But the Court properly pointed out that his active participation in the Communist Party apparatus gave the lie to his claim that it was all involuntary. Rejecting the contention that an advanced education—in this case a medical education—was an "essential of living" sufficient to render exculpatory his Communist membership, the Court distinguished this alien's situation from the dilemma facing the alien in *Grzymala-Siedlecki*, whose activities in the government-sponsored Polish Youth Organization were compulsory and automatic. The Court ruled that there was obviously "little similarity between the lethargic and militarily prescribed role played by the alien in *Grzymala-Siedlecki* and the wide range" of the alien's activities in *Langhammer*.[11]

By contrast to *Langhammer*, the Fifth Circuit Court of Appeals found that the alien in *Grzymala-Siedlecki* joined a People's Youth Organization in which he was automatically a member by reason of his enrollment in the Naval Academy, having signed no application, received no membership card, and never been sworn in. "His only participation in its activities was compulsory attendance at bi-monthly meetings while a student. At a few of the meetings he was required to make a brief talk to stimulate discussion and then he chose economics as his subject." [12] With such activities described, as we have noted in *Langhammer* as "lethargic and militarily prescribed", the alien in *Grzymala-Siedlecki* was held to be qualified for naturalization and United States citizenship.

Turning to *Kladjic*, the case now before us, we find that here the alien, just as in *Grzymala-Siedlecki*, joined a People's Youth Organization but signed no application and was never sworn into the Party. Nor did he carry a Communist Party membership card. Although petitioner here was selected as incoming Chairman of the Subotica Bicycle Factory branch of Narodna Omladina Jugoslavije, membership in which was compulsory because of his employment, it is clear beyond any doubt that he did not exercise the prerogatives or duties of the office of Chairman and only appeared willing to accept the chairmanship in order to make certain that no suspicions would be aroused by his journeying to Belgium for the World's Fair, and that nothing would jeopardize his application for the necessary travel documents. As a matter of fact, he did not ever become Chairman but merely sat at the front of the meetings with the then Chairman in an effort, as we necessarily find from the evidence, to guarantee his escape to the Brussels World's Fair.

His action in going along with the selection of himself as incoming Chairman and his sitting with the then Chair-

11. Langhammer v. Hamilton, 295 F.2d 642, 647, (C.A. 1st 1961).

12. Grzymala-Siedlecki v. United States, 285 F.2d 836, 838 (C.A. 5th, 1961).

man to learn the procedures were purely and simply *simulated* enthusiasms for the new job. They are not and could not be equated with becoming an active officer in an official sense. Realistically, we cannot find that petitioner ever led the People's Youth Organization there in the bicycle factory where he worked.

We find that petitioner's membership was essentially involuntary and automatic without any of the mental, moral, ideological, philosophic or religious commitments to the organization which, if present, would disqualify a citizen from being naturalized. In the case before us, from the facts that petitioner was a member of the Greek Orthodox Faith, and that he took a chance and went to prison when he tried to escape in 1953, as well as from looking at the man himself, his thoughts, his motives, his intentions, we must necessarily conclude that here we have a situation much more like *Grzymala-Siedlecki* than like *Langhammer*.

■■ We therefore must and do conclude, not only factually, but as a matter of law, that the Narodna Omladina Jugoslavije may not be the kind of forbidden organization set forth in the statute,[13] and even if it is, petitioner's membership was involuntary, compulsory, and for the purposes of obtaining employment or other essentials of living, thereby bringing him within the exemptions or exceptions of § 313(d) of the Act.[14]

### Second Issue

#### "FAILURE TO ESTABLISH LAWFUL ADMISSION TO THE UNITED STATES FOR PERMANENT RESIDENCE."

The Government contends that the petitioner has failed to establish his lawful admission to the United States for permanent residence because he failed to reveal his membership in the Narodna Omladina Jugoslavije at the time he received his Immigrant Visa to come to the United States.

■ It is true that on his application for Immigrant Visa and Alien Registration, admitted into evidence, there is no mention of that organization in the space so provided. That document was written entirely in the English language and it is apparent from the evidence before us that because of the lack of petitioner's understanding of English at that time, and the manner in which the form was presented to him, the failure to list that organization on the form was unintentional on his part. We are satisfied that the Consular Official would not have made any other decision than issuance of the Immigrant Visa even if he had seen or been informed that petitioner was a member of the Narodna Omladina Jugoslavije.

We therefore find that he has been properly admitted to the United States for permanent residence.

### CONCLUSIONS OF LAW:

From the foregoing facts and discussion the Court concludes that:

(1) The Narodna Omladina Jugoslavije may not be the kind of forbidden organization set forth in Section 313 of the Immigration and Nationality Act, 8 U.S.C.A. § 1424.

(2) Petitioner's membership in the Narodna Omladina Jugoslavije was involuntary, compulsory, and for the purposes of obtaining employment and other essentials of living.

(3) Petitioner has been lawfully admitted to the United States for permanent residence.

(4) Petitioner has established his eligibility for citizenship and naturalization under all pertinent sections of the Immigration and Nationality Act.

(5) Petitioner is entitled to the judgment and order of this Court granting his petition for naturalization and admitting him to citizenship upon his taking the prescribed oath of allegiance to the United States.

13. § 313(a) (2) of the Act; 8 U.S.C.A. § 1424(a) (2).

14. 8 U.S.C.A. § 1424(d).

The foregoing shall and does constitute the Decision, Findings of Fact, and Conclusions of Law herein, as required by Rule 52, Federal Rules of Civil Procedure. See also Application of Murra, 166 F.2d 605 (C.C.A.7th, 1948).

### JUDGMENT AND ORDER GRANTING PETITION FOR NATURALIZATION

Upon consideration of the petition of Ljubivoje KLAJIC for naturalization recommended by the Immigration and Naturalization Service to be denied, and the evidence herein; and based upon the foregoing Decision, Findings of Fact and Conclusions of Law,

It is adjudged that the petitioner is eligible for naturalization and the petition for naturalization is hereby granted;

It is further ordered and adjudged that the petitioner be admitted to citizenship and the oath of citizenship be administered to the petitioner according to law.